OSCN Found Document:TRUEL v. A. AGUIRRE LLC

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 







 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 TRUEL v. A. AGUIRRE LLC
2017 OK 105
Case Number: 115229; Consol. w/115170
Decided: 12/19/2017
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2017 OK 105, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

JOHN TRUEL et al., Plaintiffs/Appellees,
v.
A. AGUIRRE LLC et al., Defendants/Appellants.
and
GLADYS ERBAR and TOM ERBAR, individuals, Plaintiffs/Appellees,
v.
A. AGUIRRE LLC et al., Defendants/Appellants.

Petition for Certiorari to Review a Certified Interlocutory Order of the District
Court of Canadian County, Gary E. Miller, District Judge.

¶0 The plaintiffs/respondents sued hundreds of defendants, whom the plaintiffs asserted had served them mixed drinks over a period of several years prior to filing the lawsuit. The plaintiffs claimed that the defendants had violated a tax statute, 37 O.S.2011, § 576(B)(2), that required a 13.5% tax on the gross receipts the holders of a license by the ABLE Commission for sale of a mixed beverage. They contended that the licensees who failed to combine the retail sale price with the tax in its advertised price had overcharged their customers by 13.5%. The defendants/appellants appealed the trial judge's construction of the statute. This Court ordered that the cases involved would be reviewed as certified interlocutory orders by the district court.

REMANDED WITH ORDERS TO DISMISS.

Mark Hendricksen, Lanita Hendricksen, HENDRICKSEN & HENDRICKSON LAWYERS, INC., El Reno, Oklahoma, for Plaintiffs/Respondents.

FENTON R. RAMEY, Yukon, Oklahoma, for Gladys Erbar. Plaintiff/Respondent.

TOM ERBAR, pro se, Plaintiff/Respondent.

John N. Hermes, Zachary A.P. Oubre, McAFEE & TAFT, A Professional Corporation, Oklahoma City, Oklahoma, for various Defendants/Petitioners.

And Forty-five other separate law firms, for various Defendants/Petitioners.

Winchester, J.

¶1 The issue before us involves the construction of a subsection in a subsequently amended tax statute. The statute is codified in Title 37, entitled "Intoxicating Liquors", Chapter 3, entitled "Oklahoma Alcoholic Beverage Act, and Section 576, entitled "Tax on Gross Receipts of Certain Licensee Holders." Subsection A of the statute levies a tax of 13.5% on "the total gross receipts of a holder of a mixed beverage, caterer, public event or special event license, issued by the ABLE Commission." Section 576 provided:

"A. A tax at the rate of thirteen and one-half percent (13.5%) is hereby levied and imposed on the total gross receipts of a holder of a mixed beverage, caterer, or special event license, issued by the ABLE Commission, from:

"1. The sale, preparation or service of mixed beverages;

"2. The total retail value of complimentary or discounted mixed beverages;

"3. Ice or nonalcoholic beverages that are sold, prepared or served for the purpose of being mixed with alcoholic beverages and consumed on the premises where the sale, preparation or service occurs; and

"4. Any charges for the privilege of admission to a mixed beverage establishment which entitle a person to complimentary mixed beverages or discounted prices for mixed beverages.

"B. For purposes of this section:

"1. 'Mixed beverages' means mixed beverages as defined by Section 506 of this title;

"2. 'Total gross receipts' means the total amount of consideration received as charges for admission to a mixed beverage establishment as provided in paragraph 4 of subsection A of this section and the total retail sale price received for the sale, preparation or service of mixed beverages, ice, and nonalcoholic beverages to be mixed with alcoholic beverages. The advertised price of a mixed beverage shall be the sum of the total retail sale price and the gross receipts tax levied thereon; and

"3. 'Total retail value' means the total amount of consideration that would be required for the sale, preparation or service of mixed beverages.

"C. The gross receipts tax levied by this section shall be in addition to the excise tax levied in Section 553 of this title, the sales tax levied in the Oklahoma Sales Tax Code, Section 1350 et seq. of Title 68 of the Oklahoma Statutes and to any municipal or county sales taxes.

"D. The gross receipts tax levied by this section is hereby declared to be a direct tax upon the receipt of consideration for any charges for admission to a mixed beverage establishment as provided in paragraph 4 of subsection A of this section, for the sale, preparation or service of mixed beverages, ice, and nonalcoholic beverages to be mixed with alcoholic beverages, and the total retail value of complimentary or discounted mixed beverages.

"E. The total of the retail sale price received for the sale, preparation or service of mixed beverages, ice, and nonalcoholic beverages to be mixed with alcoholic beverages shall be the total gross receipts for purposes of calculating the sales tax levied in the Oklahoma Sales Tax Code, Section 1350 et seq. of Title 68 of the Oklahoma Statutes."

Amended by Laws 2001, SB 501, c. 78, § 8, eff. November 1, 2001, codified at 37 O.S.2011, § 576.

¶2 That statute defines "total gross receipts" at § 576(B)(2). Included with that definition is a sentence which provides: "The advertised price of a mixed beverage shall be the sum of the total retail sale price and the gross receipts tax levied thereon. . . ." A subsequent amendment changed the "shall" to "may." 2013 Okla.Sess.Laws, c. 369, § 1.

¶3 In two different district court cases in Canadian County the Plaintiffs/Respondents, hereinafter "plaintiffs," have sued hundreds of defendants, who allegedly served the plaintiffs mixed drinks for a period of several years prior to filing these lawsuits. The plaintiffs sought a declaratory judgment ruling that the prices charged by the defendants for mixed alcoholic beverages violated § 576(B)(2). If the plaintiffs received a favorable ruling, a request for certification of class actions would follow. The theory for recovery would be based on contract, conversion, fraud, and consumer rights found within the Consumer Protection Act (15 O.S.2011, § 751 through § 764.1).

¶4 This cause comes before this Court on an Order Certifying Declaratory Rulings for Immediate Interlocutory Appeal, pursuant to 12 O.S.2011, § 952(b)(3).[1] The general declaratory rulings construe 37 O.S.2011, § 576(B)(2) as requiring those who sell mixed drinks to include the price of the drink and the 13.5% tax levied on it. The court concluded that separating the price of the drink and the mixed beverage tax on an invoice unlawfully violated the statute. Based on the court's rulings, the plaintiffs appear to presume that the tax was deemed included as a matter of law within all the drinks sold to the plaintiffs, and then the tax was added again by the defendants, thereby defrauding the plaintiffs of the benefit of their contract, unjustly enriching the defendants and converting and retaining the extra 13.5%. The trial court's legal ruling does not support the plaintiffs' inference from that decision.

¶5 The first paragraph of the plaintiffs' Answer Brief complains that the fundamental controversy is whether they should "get back monies which they were overcharged" and that they are entitled by Oklahoma's Constitution to a "certain remedy for every wrong." This Court, of course, agrees that the Constitution supports a remedy for every legal wrong. The emphasis should be whether the alleged violation constitutes a "legal" wrong. The trial court construed the statute and concluded that establishments selling mixed drinks must include the 13.5% tax in the advertised price. Even assuming the trial court was correct, that decision does not overcome the plaintiffs' burden to establish that such a violation entitles the plaintiffs to damages.

I. WHAT IS AN ADVERTISED OFFER?

¶6 The plaintiffs assert that all parties agree "that Defendants are on-premise retailers (Finding of Fact #5), who offered certain mixed drinks for sale to their customers at certain advertised prices." There are two terms within this asserted agreed finding of fact that are not factual conclusions. They are legal terms that must be construed by this Court. We begin our analysis of the law by discussing these two terms.

¶7 The Restatement of Contracts § 26 (1981) is entitled "Preliminary Negotiations." Section b, which is entitled "Advertising," provides the observation that "Business enterprises commonly secure general publicity for the goods or services they supply or purchase. Advertisements of goods by display, sign, handbill, newspaper, radio or television are not ordinarily intended or understood as offers to sell." Representations made in advertisements and price lists are treated as "invitations to negotiate."[2] Otherwise, if the seller advertises a product price, such as that of a mixed drink, and the supply of the product is insufficient to meet the demands of the patrons, each patron who did not receive the product, after "accepting the offer," could claim a breach of contract. If the advertisement is treated as an "invitation to negotiate," the seller could inform the patrons that the product has sold out, and no breach of contract occurs.

¶8 Who made the offers in the cause before this Court? The plaintiffs made the offers. The retailers accepted the offers and sold them for the amount offered by the buyers. Advertised prices are subject to offers by the customer that are lower than the advertised price. The sellers are then entitled to accept that offer if they wish to do so. If the retailers had surreptitiously charged a different price after the agreement was concluded, then the buyers would have a right to complain. But in this cause the plaintiffs did not allege that the defendants failed to serve the drinks at the price the plaintiffs each offered.

¶9 Advertisements, if sufficiently specific, such as "I will sell this drink to the first person to accept for $10," would be an offer that could be accepted by the first to respond with the $10. Lefkowitz v. Great Minneapolis Surplus Store, Inc., 251 Minn. 188, 86 N.W.2d 689 (1957). But generally speaking, advertisements list prices of a finite number of products, which numbers are subject to offers to buy from a larger number of customers. A reasonable consumer understands that demand for a product from an advertiser may result in the depletion of the advertiser's stock.

¶10 Mr. Truel testified that he started his investigation by going to the Oklahoma Tax Commission and getting a list of those holding a Class A license to serve mixed beverages. He then went into these establishments of the defendants multiple times even after he had concluded that he had been overcharged for his mixed drink, according to his interpretation of § 576. Yet he did not protest to any of the retailers at the time he bought the mixed beverages, even when he knew the 13.5% tax was being added in separately on his bill. He admitted during his testimony that he had no evidence that any of the defendants failed to remit the mixed beverage tax to the Oklahoma Tax Commission.

¶11 Accordingly, the alleged violation of a tax law regarding advertising a mixed drink cannot result in a legal wrong to a patron. The patron made the offer. The patron agreed to pay the amount offered, at which point the seller accepted the offer. There is now a contract. There is no deception involved under these facts.

II. DOES THIS TAX STATUTE PROTECT CONSUMERS?

¶12 The subject of this statute, and accordingly its context, is the rate of taxes to be levied on "the total gross receipts of a holder of a mixed beverage, caterer, public event or special event license, issued by the ABLE Commission." There is nothing in this statute that implies it is written for the protection of consumers of mixed drinks. If it were to protect consumers, why not require all retailers to include sales taxes in the advertised prices of their products? Although the plaintiffs' arguments are creative, their assertions of consumer mistreatment do not reasonably consider the context of the sentence, which they have isolated from the statute as a whole.

¶13 The arguments in the briefs presented to this Court reveal that the Tax Commission had difficulty in determining how to enforce this statute, other than its obvious purpose of collecting a 13.5% tax on mixed alcoholic beverages. The Tax Commission testified to three methods used by that agency to collect the tax. The Legislature appears to have acknowledged the problem by changing the law to read that the advertised price of a mixed beverage "may," instead of "shall" be the sum of the total retail sale price and the gross receipts tax levied thereon. 2013 Okla.Sess.Laws, c. 369, § 1. The title of that amendment is "An Act relating to revenue and taxation; amending 37 O.S. Section 576, which relates to gross receipts tax on mixed beverages; making certain requirement permissive; prohibiting certification of a class for certain actions relating to mixed beverage, sales or use taxes; and providing for codification." In other words, it is a tax statute, not a consumer protection statute.

III. CONCLUSION

¶14 Although the briefs from the parties skillfully address other permutations of argument on both sides of this cause, we conclude that what we have chosen to address sufficiently resolves the main issue presented. The statute's ambiguities caused sufficient problems in collection of the tax that the Legislature amended the statute. We hold that the statute's purpose does not involve protecting consumers from having a tax separately listed from the price of a drink instead of including it in the price of a drink. Because the complaints of the plaintiffs against the defendants rest on the assumption that 37 O.S.2011, § 576(B)(2) protects consumers, and we have held that it is solely a tax statute, we order the trial court to dismiss these cases.

REMANDED WITH ORDERS TO DISMISS.

CONCUR: COMBS C.J., WATT, WINCHESTER, EDMONDSON, and REIF, JJ.

CONCUR IN JUDGMENT: GURICH, V.C.J.

CONCUR IN PART; DISSENT IN PART: KAUGER, COLBERT, JJ.

NOT PARTICIPATING: WYRICK, J.

FOOTNOTES

[1] Title 12 O.S.2011, § 952(b)(3) provides: "(b) The Supreme Court may reverse, vacate or modify any of the following orders of the district court, or a judge thereof: . . . 3. Any other order, which affects a substantial part of the merits of the controversy when the trial judge certifies that an immediate appeal may materially advance the ultimate termination of the litigation; provided, however, that the Supreme Court, in its discretion, may refuse to hear the appeal. If the Supreme Court assumes jurisdiction of the appeal, it shall indicate in its order whether the action in the trial court shall be stayed or shall continue."

[2] Kenneth W. Clarkson, Roger LeRoy Miller & Frank B. Cross, Business Law Text and Cases, 233, (14th ed. 2018). "[I]f goods are advertised for sale at a certain price, it is generally not an offer, and no contract is formed by the statement of an intending purchaser that he or she will take a specified quantity of the goods at that price. [footnote omitted] Rather, the courts routinely hold that such advertisements or other expressions of intention are invitations to soliciting offers or to enter into a bargain rather than offers themselves." 1 Williston on Contracts § 4:10 (4th ed.) May 2017 Update.

 





 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 952, Jurisdiction of Supreme Court
Discussed
Title 37. Intoxicating Liquors
 Cite
Name
Level

 37 O.S. 576, Repealed
Discussed at Length